# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRY MOBLEY JR., | : | CIVIL NO: 1:14-CV-00035 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This *pro se* prisoner lawsuit, filed by the plaintiff, Gerry Mobley ("Mobley"), is proceeding *via* an amended complaint consisting of 626 handwritten paragraphs. Mobley's 30 claims against 37 defendants stem from his imprisonment at SCI Huntingdon and cover a period from June 18, 2010 to May 17, 2013. Presently before the Court are five ripe motions to dismiss. Our recommendations follow.

## I.     Background and Relevant Procedural History.

On January 10, 2014, Mobley filed a handwritten 303-page complaint consisting of 1,788 paragraphs and a 20-page exhibit. *Doc.* 1. Along with his complaint, Mobley filed a motion to proceed *in forma pauperis*, *Doc.* 2, which we granted and simultaneously ordered the United States Marshal's Service to serve the defendants. *Doc.* 8. After some of the defendants named in the original complaint had been served by the Marshal's Service, they filed motions to dismiss,

respectively. *See, e.g., Doc.* 20.  Before we were able to address those dispositive motions, Mobley sought leave to amend his complaint.  *Doc.* 57.  On May 6, 2014, we granted Mobley's request for leave to amend, *Doc.* 59, and, thereafter, Mobley filed an amended complaint.  *Doc.* 60.

In Mobley's amended complaint, which is 94-pages long, consisting of 626 paragraphs and 30 counts, he names the following 37 defendants: (1) John Wetzel ("Wetzel"), the Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) Tabb Bickell ("Bickell"), the Superintendent at SCI Huntingdon; (3) Christopher Oppman ("Oppman"), the DOC's Director of Health Care Services; (4) Traci Parkes ("Parkes"), a contract vendor with the DOC; (5) FNU Garman, the Deputy Superintendent of Centralized Services at SCI Huntingdon; (6) FNU Eckard, the Deputy Superintendent of Facilities Management at SCI Huntingdon; (7) Philip Shoaf ("Shoaf"), a doctor at SCI Huntingdon; (8) Luis Araneda ("Araneda"), a doctor at SCI Huntingdon; (9) Joseph Migliore ("Migliore"), a doctor at SCI Huntingdon; (10) Joseph Tavares ("Tavares"), a doctor at SCI Huntingdon; (11) Conrado Agra ("Agra"), a doctor at SCI Huntingdon; (12) Ronald Long ("Long"), a doctor at SCI Huntingdon; (13) Marty Cole ("Cole"), a doctor at SCI Huntingdon; (14) Kathe Kozak ("Kozak"), a dentist at SCI Huntingdon; (15) Dana Keith ("Keith"), a phlebotomist at SCI Huntingdon; (16) May Lou Showalter ("Showalter"), a correctional health care administrator at SCI

Huntingdon; (17) Paula Price ("Price"), a correctional health care administrator at SCI Huntingdon; (18) Ann Hoffmaster ("Hoffmaster"), a registered nurse ("RN") at SCI Huntingdon; (19) Michelle Harker ("Harker"), an RN at SCI Huntingdon; (20) Kennie Williams ("Williams"), an RN at SCI Huntingdon; (21) Michael Feathers ("Feathers"), an RN at SCI Huntingdon; (22) Shawn McCorkle ("McCorkle"), an RN at SCI Huntingdon; (23) Melanie Wegman ("Wegman"), an RN at SCI Huntingdon; (24) Christa Rescigno ("Rescigno"), a physician's assistant ("PA") at SCI Huntingdon; (25) Jennifer Trimai ("Trimai"), a PA at SCI Huntingdon; (26) Angela Dively ("Dively"), a PA at SCI Huntingdon; (27) Tanya Chew ("Chew"), a PA at SCI Huntingdon; (28) Michael Gomez ("Gomez"), a PA at SCI Huntingdon; (29) John Roth ("Roth"), a medical care provider at J.C. Blair Memorial Hospital ("J.C. Blair"); (30) Thomas Shower ("Shower"), a medical care provider at J.C. Blair; (31) FNU Williams, a medical care provider at J.C. Blair; (32) FNU Hriebe, a medical care provider at J.C. Blair; (33) Gregory Jabbour ("Jabbour"), a Cardiologist at Altoona Regional Healthcare; (34) Heather Weidel ("Weidel"), a "CCMP" at SCI Huntingdon; (35) Dorina Varner ("Varner"), the Chief Secretary of Inmate Grievances and Appeals; (36) Patti Stover ("Stover"), a special assistant to Wetzel; and (37) Jane Doe, a neurosurgeon or neurologist.

To summarize, Mobley's claims stem from his imprisonment at SCI Huntington from June 18, 2010 to May 17, 2013. His allegations, drafted in a

diary-like manner, generally provide a day-by-day account of his physical condition, the conditions of the prison at SCI Huntingdon, the medical treatments and prescriptions he received, the varying medical opinions he received about his condition, his interactions with medical personnel at the prison and at private hospitals, his interactions with employees at the prison, and the various grievances he filed.   Because of the manner in which the amended complaint is drafted, Mobley's claims often blend together.   Nevertheless, we understand Mobley to be attempting to raise claims that he was denied adequate medical care, subjected to inhumane conditions of confinement, subjected to retaliatory acts, and denied access to courts in violation of the Eighth and First Amendments to the United States Constitution, respectively.   Mobley also raises state-law claims.   For relief, Mobley requests compensatory and punitive damages, along with declaratory and injunctive relief.

Pending before the Court are motions to dismiss filed by the following defendants: Keith, Trimai, Bickell, Eckard, Feathers, Garman, Harker, Hoffmaster, Kozak, McCorkle, Oppman, Price, Showalter, Stover, Varner, Wagman, Weidel, Wetzel, Williams, Roth, Hriebe, Jabbour, Dively, Gomez, Long, and Parkes.

*Docs.* 65, 67, 68, 92, & 103.[1]  These motions are presently ripe for review.[2]

## II.   **Legal Standard.**

Pursuant to the Federal Rules of Civil Procedure, a pleading *must* contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the pleading standard announced in Rule 8 does not require "detailed factual allegations."  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," however.  *Id.*  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  Rather, to comply with Rule 8(a)(2) and withstand Rule 12(b)(6), the mechanism through which a party may move to dismiss a pleading for failing to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.

---

[1]   The motion to dismiss filed by Trimai and Keith, *Doc.* 65, is alternatively styled as a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

[2]   As reflected on the Docket, some of the defendants have not been served. *See Docs.* 117, 118, 120, 121, & 123.  Our recommendation, however, that Mobley's amended complaint be dismissed but that he be permitted to file a final, amended complaint, may operate to cure any service deficiencies.  As such, we do not address the issues related to service in this Report.

A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. In other words, this standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Under this plausibility test, a court may not dismiss a complaint merely because it appears unlikely or improbably that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n. 8. The test, instead, essentially requires a federal court to ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 563 n. 8. Accordingly, a complaint that provides adequate facts to show "how, when, where, and why" will generally survive a Rule 12(b)(6) motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009); *Guirguis v. Movers Specialty Services, Inc.*, 346 F. App'x 774, (2009).

"In keeping with these principles a court considering a [complaint under Rule 12(b)(6)] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Thereafter, "[if] well-pleaded factual allegations [are identified], a

6

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Last, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

## III. Discussion.

Mindful of the aforementioned legal standard, we begin by addressing the unnecessary length of Mobley's amended complaint, as do Trimai and Keith. *Doc.* 66 at 4-6. To that end, we reiterate that Rule 8(a)(2) mandates that a complaint contain "a short and plain statement of the claim," and detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. Otherwise, no rules of court exist regarding the proper length of a pleading. It has been observed, however, that "the proper length … for a pleading … is largely a matter for the discretion of the trial court." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1217.

Even though the length of complaints tends to be a matter of discretion for the trial courts, some Circuit Courts have held that the length of a pleading alone does not normally serve as a basis for dismissal, for a violation of Rule 8. *See*

*Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131-31 (9th Cir. 2008)(collecting cases). A lengthy complaint, however, can generally be dismissed for violating Rule 8 if it is also so rambling, unclear, or complicated so as to defy response. *See, e.g., In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996)("The second amended complaint is unnecessarily *complicated and verbose*.")(Emphasis added). In other words, if a lengthy complaint is drafted in a manner that makes it impossible to "separate the wheat from the chaff," it may generally be dismissed for a Rule 8 violation. *See Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007)(affirming Rule 8 dismissal when it was impossible to "separate the wheat from the chaff" in the complaint and because "[i]t was not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading."); *see also Lindell v. Houser*, 442 F.3d 1033, 1035 (7th Cir. 2006)("District courts should not have to read and decipher tomes disguised as pleadings."); *Cody v. Leon*, 468 F. App'x 644, 645 (8th Cir. 2012)(holding that a lengthy complaint was properly dismissed under Rule 8 where the claims were either unrelated or overlapping, and most were based on incidents which occurred over several years); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281 ("Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."). Where a court chooses to dismiss a

lengthy complaint for violating Rule 8, it shall normally grant the plaintiff an opportunity to file an amended pleading that conforms to the pleading requirements. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281; 2A Moore's *Federal Practice* ¶ 8.13, at 8-81 to 8-82 n. 38.

Here, while Mobley's amended complaint is much shorter than the original, there is no question that Mobley's amended complaint is still vast in breadth and scope. In addition to its unnecessary length, Mobley's amended pleading meanders back and forth across overlapping yet distinct sets of named defendants. As a whole, the allegations appear to concern Mobley's medical condition and treatments; though, the allegations also bring into play a variety of topics while spanning the course of Mobley's imprisonment at SCI Huntingdon for nearly three years. Further, given the hyper-detailed, day-by-day account for the same three-year period, it is at times difficult to sift through the amended complaint and stitch together the relevant allegations in relation to the 30 enumerated counts. Consequently, based upon the contents of Mobley's amended pleading, we have expended an inordinate amount of time and judicial resources to review the filing for purposes of evaluating whether Mobley has sufficiently stated a claim for relief. As such, we do not waiver in agreeing with Trimai and Keith, and recommend the dismissal of Mobley's amended complaint, in its entirety, for

violating Rule 8.[3]

In making this recommendation, we remain cognizant of Mobley's status as a *pro se* litigant and our obligation to liberally construe *pro se* pleadings. That Mobley is a *pro se* litigant, however, does not excuse him from complying with the Federal Rules of Civil Procedure or this Court's Local Rules. As such, just as he must comply with every other applicable rule, Mobley must also attempt to adhere to the strictures of Rule 8.

It is also not lost on the Court that the defendants have likely spent considerable time, effort, and resources in formulating and drafting their motions and corresponding filings. Yet, a dismissal on this basis, for a violation of Rule 8, should operate to protect their interests as much as Mobley's, even though we will also recommend granting him with leave to file a final amended complaint. Furthermore, a dismissal on this basis should operate to reinforce the provision set forth in Rule 8 – and squarely at issue -- that a pleading *must* contain a "short and plain statement of the claim."

---

[3] The *in-forma-pauperis* statute, 28 U.S.C. § 1915(e)(2)(B)(ii), provides that an action can be dismissed at any time if the Court determines that the action fails to state a claim upon which relief can be granted. Accordingly, in finding that Mobley has failed to state a claim for relief by violating Rule 8, this recommendation, although only raised by Trimai and Keith, can be extended to cover the other defendants named in Mobley's amended complaint and the claims raised against them, as Mobley is proceeding *in forma pauperis*.

To assist him in filing a final amended complaint, we suggest that Mobley should: (1) refrain from repeating allegations, unless absolutely necessary; (2) include allegations about each defendant in a single location rather than scattering the allegations throughout the pleading; (3) refrain from going into detail about every single discussion that may have occurred, unless absolutely relevant to the claims; (4) refrain from discussing events that only have a tangential relation to the underlying claims; (5) refrain from arguing and using conclusive allegations; and (6) refrain from providing a day-by-day account of the underlying events, unless the dates are relevant to the claims.  To further assist him, we will provide Mobley, *infra*, with the law relevant to his federal claims, and alternatively suggest that he use the law as a roadmap to set forth the allegations that make up his claims. Mobley should also carefully review the law provided to him and evaluate whether he should still proceed on every claim or focus on the principal ones, against the principal actors.

### A. The Civil Rights Statute, 42 U.S.C. § 1983.

Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

11

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The Third Circuit has explained: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

Importantly, it is also well-established that claims raised pursuant to § 1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, *via* the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).

Accordingly, "there must be allegations that the official had knowledge or acquiesced in any purported acts of constitutional mistreatment." *Ball v. Hartman*, No. 09-0844, 2010 WL 597401, at *2 (M.D. Pa. Feb. 16, 2010). Stated differently, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode*, 845 F.3d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Id.* at 1208. As well, "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011).

When re-pleading his claims, Mobley must also keep the Eleventh Amendment in mind.[4] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend XI. "It is well-settled as a matter of judicial construction that despite its limited and seemingly unambiguous language, the Eleventh Amendment constitutionalizes a much more far-reaching principle of

---

[4] The Eleventh Amendment applies with equal force to claims that arise under federal law as to claims arising under state law.

state sovereign immunity." *Everett v. Schramm*, 772 F.2d 1114, 1118 (3d Cir. 1985)(citations omitted).  Thus, in *Hans v. Louisiana*, the Supreme Court held that the Eleventh Amendment prohibits a federal court from hearing a suit brought against a state by *its own* citizens, absent the state's consent.  134 U.S. 1 (1890). Extending this doctrine further, it has also been held that where a state agency or department is named as a defendant, that too is considered a suit against the state; a suit which is barred by the Eleventh Amendment.  *Everett*, 772 F.2d at 1118 (citing *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147 (1981)).  Similarly, where state officials are named as defendants, "[t]he general rule is that relief sought nominally against a [state] officer is in fact against the sovereign if the decree would operate against the latter," *Id.* (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)).  Such a suit, therefore, is also barred by the Eleventh Amendment, and this is all true regardless of whether suit is brought under federal law, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996), or state law.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

The doctrine of Eleventh Amendment sovereign immunity, however, is not absolute.  The Amendment does not bar such suits where the state has waived its immunity, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), or where Congress has validly abrogated the state's immunity under the Fourteenth

Amendment, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).  Similarly, while "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter," *Gordon*, 373 U.S. at 58, and is barred by the Eleventh Amendment, there are certain exceptions. Of vast import, a claim against a state official in his or her official capacity is not barred by the Eleventh Amendment where a suit seeks "prospective relief to end an ongoing violation of federal law."  *Christ the King Manor, Inc. v. Sec'y of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013); *see Green v. Mansour*, 474 U.S. 64, 68 (1985)(providing that plaintiffs can bring suits against state officers, but that their remedies are limited to those that are "designed to end a continuing violation of federal law."); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)("[This] exception is narrow: it applies only to prospective relief, [and] it does not permit judgments against state officers declaring that they violated federal law in the past….").

Furthermore, for Mobley's benefit, the Commonwealth of Pennsylvania has expressly withheld consent and has not generally waived its Eleventh Amendment immunity for claims for monetary damages, *see* 42 Pa. Cons. Stat. Ann. § 8521– 22.  Also, Congress, through the enactment of 42 U.S.C. § 1983, did not expressly abrogate the States' sovereign immunity for claims for monetary damages. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

15

Assuming that Mobley can satisfy these requirements in his amended pleading, we would turn to the allegations relating to the substance of his § 1983 claims for alleged constitutional violations.

**B. First Amendment Retaliation.**

Under the First Amendment, governmental actors are prohibited from "abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend I.  It is well-established that retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000). Individuals claiming unconstitutional retaliation must show that (1) they engaged in conduct protected by the First Amendment such as the filing of a grievance, (2) they suffered an "adverse action" by government officials, and (3) impairment of the expressive conduct was "a substantial or motivating factor" for the official action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Briener v. Litwhiler*, 245 F.Supp.2d 614, 632 (M.D. Pa. 2003).

Regarding the first element, "[t]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–84 (1981)). With respect to the third element, a plaintiff must sufficiently

16

demonstrate a "causal link between constitutionally protected action and the adverse action taken…." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).   Generally, a plaintiff "may demonstrate causation through a 'pattern of antagonism' following the plaintiff's protected conduct or unusually suggestive temporal proximity" between the protected and retaliatory conduct. *Motto v. Wal–Mart Stores East, LP*, No. 11–2357, 2013 WL 1874953, at *8 (E.D. Pa. May 13, 2013) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)). In doing so, a plaintiff must provide "a chronology of events from which retaliation may be inferred." *Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799, 802 (E.D. Pa. 2009) (citations and internal quotations omitted).

### C. Eighth Amendment Claims.

The Eighth Amendment, in pertinent part, guarantees the right to be free from cruel and unusual punishment inflicted by the Government.  *See* U.S. CONST. Amend VIII. "The primary concern of the drafters [of the Eighth Amendment] was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).   In the Twentieth Century, however, the Supreme Court held that the Amendment proscribes more than physically barbarous punishments "embod[ying] 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency…,' against which [federal courts] must evaluate penal measures." *Id* (citations omitted).   Thus, the Supreme Court has

17

since held repugnant to the Eighth Amendment "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society … or which involve the unnecessary and wanton infliction of pain." *Id.* (quoted cases omitted).

In light of these elementary principles, claims raised under the Eighth Amendment are generally said to include an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *but see Brooks v. Kyle*, 204 F.3d 104, 108 (3d Cir. 2000)(explaining that in the excessive force context there is no objective component). The objective component is normally contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component on the other hand follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297); *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). What is necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the Eighth Amendment claim. *Hudson,* 503 U.S. at 5. Among the claims that a prisoner may raise under the guise of the Eighth Amendment are those involving the conditions of confinement or inadequate medical care.

### 1.  Conditions of Confinement.

It is well-settled that "the conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment."  *Farmer*, 511 U.S. at 832 (quoted case omitted).  The Constitution, however, "does not mandate comfortable prisons."  *Id.* (quoted case omitted).  The Constitution, specifically the Eighth Amendment, instead, imposes on prison officials a duty to only provide *humane* conditions of confinement.  *Id.*  As such, prisons are merely required to provide *adequate* food, clothing, shelter, medical care, and must take *reasonable* measures to guarantee the safety of the inmates.  *Farmer,* 511 U.S. at 832-33.

When humane conditions are denied, liability can only be established if a prison official has a "sufficiently culpable state of mind" and the alleged conditions must be sufficiently serious from an objective standpoint.  *Id.* at 834.  In prison-conditions cases the state of mind of a prison official is one of "deliberate indifference."  *Id.*

"Deliberate indifference describes a state of mind more blameworthy than negligence."  *Id.* at 835.  To establish deliberate indifference, a plaintiff must show that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official drew the inference.  *Farmer,* 511 U.S. at 837.  Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not … cannot … be

19

condemned as the infliction of punishment." *Id.* at 838; *see also Wilson v. Seiter*, 501 U.S. 294, 299-302 (1991)(rejecting a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions).

### 2. Medical Care.

The elementary principles of the Eighth Amendment, *supra*, further "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. 103. This is especially true given that "[a]n inmate must rely on prison authorities to treat his medical needs…." *Id.* Moreover, "[i]n the worst cases, such a failure may actually produce physical 'torture or lingering death,' … the evils of most immediate concern to the drafters of the Eighth Amendment. [And, in] less serious cases, denial of medical care may result in pain and suffering which … would [not] serve any penological purpose." *Id.* Thus, the Supreme Court has provided:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' … proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Id.* at 104.

Accordingly, to state an Eighth Amendment medical care claim, a plaintiff must plausibly show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). To satisfy the first element, a medical need is generally considered "serious" where it "has been diagnosed by a physician as requiring treatment or is ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). Moreover, to satisfy the second element, a plaintiff must again show that the defendant(s) in question was, or were, aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official(s) drew the inference. *Farmer*, 511 U.S. at 837; *Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).

In the medical care setting, specifically, deliberate indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Under this two-pronged approach, not every claim by a prisoner that he or she did not receive adequate medical care states an Eighth Amendment violation. *Estelle,* 429 U.S. at 105.  Indeed:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 106.  Therefore, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner.  *Id*; *see also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). As well, a "medical decision not to order an X-ray, or like measures, [also] does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle,* 429 U.S. at 107.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

**D. Access to Courts.**

It is well-established that an inmate has a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 349–56 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977); *Abdul–Akbar v. Watson*, 4 F.3d 195, 202–03, 205 (3d Cir. 1993). "To state a cognizable access to courts claim, a plaintiff must plausibly show that: (1) he suffered an 'actual injury' (i.e., that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy, save the present civil rights suit that can possibly compensate for the lost claim." *Williams v. Clancy*, 449 F. App'x 87, 89 (3d Cir. 2011) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)).

**IV.    Recommendations.**[5]

Based on the foregoing, **WE RECOMMEND** that:

(1) Mobley's amended complaint, *Doc.* 60, be **DISMISSED** for violating Rule 8;

(2) The motion to dismiss, or alternatively, to strike, filed by Trimai and Keith, *Doc.* 65, be **GRANTED**;

(3) The remaining motions to dismiss, *Docs.* 67, 68, 92, & 103, be **DENIED** as moot;

(4) Mobley's motion for default judgment, *Doc.* 90, be **DENIED** as moot;

(5) Mobley be granted leave to file a final amended complaint, consistent with the contents of this Report; and

(6) The case be **REMANDED** to the undersigned for further pre-trial proceedings.

---

[5]   For brevity and jurisdictional purposes, we dispense with a discussion or explanation of Mobley's state-law claims.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **10th** day of **March 2015**.


*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

25