## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRY MOBLEY JR., | : | CIVIL NO: 1:14-CV-00035 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

On January 10, 2014, the plaintiff, Gerry Mobley, Jr., ("Mobley"), commenced this 42 U.S.C. § 1983 action by filing a handwritten complaint (*doc. 1*), naming 36 defendants and consisting of 303 pages, 1,788 paragraphs, and a 20 page exhibit, followed by an amended complaint (*doc. 60*) on May 12, 2014, naming 37 defendants and consisting of 94 pages, 626 paragraphs, and 30 counts. On March 10, 2015, after expending an inordinate amount of time and judicial resources to review Mobley's amended complaint, we recommended dismissing Mobley's amended complaint, in its entirety, for violating Rule 8 of the Federal Rules of Civil Procedure. *Doc. 124* at 24. We further recommended, however, that Mobley be granted leave to file a final amended complaint. *Id.* On March 31, 2015, Judge Caldwell adopted our recommendations and remanded the matter back

to us for further proceedings, including the filing of a final amended complaint. *Doc.* 125.

On April 1, 2015, Mobley filed a final amended complaint (*doc. 126*), naming 36 defendants and consisting of 62 pages, 494 paragraphs, and 24 counts. Four separate motions to dismiss have been filed by numerous defendants, and for the reasons set forth below, we recommend granting three of those motions (*docs. 132*, *135*, *138*), but with respect to the fourth motion (*doc. 131*), we recommend that it be granted in part and denied in part.

## II. Background.

In our March 10, 2015 Report and Recommendation, we determined that in his amended complaint (*doc. 60*), Mobley attempted to raise violations of the First and Eighth Amendments of the United States Constitution, as well as state law claims. *Doc. 124* at 4.  As alleged by Mobley, these violations stemmed from his imprisonment at SCI Huntingdon from June 18, 2010 to May 17, 2013, regarding the various grievances he filed; his physical condition; the medical treatments, prescriptions, and varying medical opinions he received as to his physical condition; the interactions he had with employees and medical personnel at the prison, as well as interactions he had with medical personal at private hospitals; and finally, the conditions of SCI Huntingdon. *Id.* at 3-4. Ultimately, we determined that Mobley's amended complaint should be dismissed for violating

Rule 8 of the Federal Rules of Civil Procedure.  *Id.* at 9-10.  Specifically, we

addressed the unnecessary length of Mobley's amended complaint, how it was vast

in breadth and scope, and how it meandered back and forth across overlapping, yet

distinct sets of named defendants.  *Id.* at 9.  We also addressed the hyper-detailed

nature of Mobley's allegations, which were drafted in a diary-like manner, making

it arduous to sift through his amended complaint and try to stitch together the

relevant allegations in relation to his 30 enumerated counts.  *Id.*  In making these

determinations, we remained cognizant of Mobley's status as a *pro se* litigant, and

thus, our obligation to liberally construe his amended complaint. *Id.* at 10.

Nevertheless, we emphasized that such status does not excuse Mobley from

complying with the Federal Rules of Civil Procedure or with the Local Rules for

the U.S. District Court for the Middle District of Pennsylvania.  *Id.*  In an attempt

to guide Mobley, should he file a second amended complaint, we directed him to:

> (1) refrain from repeating allegations, unless absolutely necessary;
> (2) include allegations about each defendant in a single location
> rather than scattering the allegations throughout the pleading; (3)
> refrain from going into detail about every single discussion that
> may have occurred, unless absolutely relevant to the claims; (4)
> refrain from discussing events that only have a tangential relation to
> the underlying claims; (5) refrain from arguing and using
> conclusive allegations; and (6) refrain from providing a day-by-day
> account of the underlying events, unless the dates are relevant to
> the claims.

*Id.* at 11.  For further guidance, we provided Mobley with the law pertaining to his

various clams and suggested that he should use the law as a roadmap to set forth

his allegations. *Id.* at 11-23. Ultimately, we recommended that his amended complaint be dismissed, but that he be given leave to file a final amended complaint. *Id.* at 24.

After Judge Caldwell, on March 31, 2015, adopted our recommendations and remanded the matter back to us (*doc. 125*), Mobley filed a second amended complaint (*doc. 126*) on April 1, 2015, one day later.  In his second amended complaint Mobley names the following 36 defendants: (1) John Wetzel ("Wetzel"), the Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) Tabb Bickell ("Bickell"), the Superintendent at SCI Huntingdon; (3) Traci Parkes ("Parkes"), a contract vendor with the DOC; (4) Christopher Oppman ("Oppman"), the DOC's Director of Health Care Services; (5) FNU Garman ("Garman"), the Deputy Superintendent of Centralized Services at SCI Huntingdon; (6) FNU Eckard ("Eckard"), the Deputy Superintendent of Facilities Management at SCI Huntingdon; (7) Philip Shoaf ("Shoaf"), a doctor at SCI Huntingdon; (8) Christa Rescigno ("Rescigno"), a physician's assistant ("PA") at SCI Huntingdon; (9) Jennifer Trimai ("Trimai"), a PA at SCI Huntingdon; (10) Luis Araneda ("Araneda"), a doctor at SCI Huntingdon; (11) Ronald Long ("Long"), a doctor at SCI Huntingdon; (12) Marty Cole ("Cole"), a doctor at SCI Huntingdon; (13) Michael Gomes ("Gomes"), a PA at SCI Huntingdon; (14) Joseph Tavares ("Tavares"), a doctor at SCI Huntingdon; (15) Joseph Migliore ("Migliore"), a

doctor at SCI Huntingdon; (16) Conrado Agra ("Agra"), a doctor at SCI Huntingdon; (17) Kathe Kozak ("Kozak"), a dentist at SCI Huntingdon; (18) Mary Lou Showalter ("Showalter"), a correctional health care administrator at SCI Huntingdon; (19) Paula Price ("Price"), a correctional health care administrator at SCI Huntingdon; (20) Angela Dively ("Dively"), a PA at SCI Huntingdon; (21) Tanya Chew ("Chew"), a PA at SCI Huntingdon; (22) Dana Keith ("Keith"), a phlebotomist at SCI Huntingdon; (23) Heather Weidel ("Weidel"), a "CCMP" at SCI Huntingdon; (24) Michelle Harker ("Harker"), a registered nurse ("RN") at SCI Huntingdon; (25) Melanie Wagman ("Wagman"), an RN at SCI Huntingdon; (26) Michael Feathers ("Feathers"), an RN at SCI Huntingdon; (27) Kennie Williams ("Williams"), an RN at SCI Huntingdon; (28) Ann Hoffmaster ("Hoffmaster"), an RN at SCI Huntingdon; (29) Patti Stover ("Stover"), a special assistant to Wetzel; (30) Dorina Varner ("Varner"), the Chief Secretary of Inmate Grievances and Appeals; (31) John Roth ("Roth"), a medical care provider at J.C. Blair Memorial Hospital ("J.C. Blair"); (32) Thomas Shower ("Shower"), a medical care provider at J.C. Blair; (33) Gregory Jabbour ("Jabbour"), a cardiologist at Altoona Regional Healthcare; (34) Haitham Hreibe ("Hreibe"), a medical care provider at J.C. Blair; (35) Shawne McCorkle ("McCorkle"), an RN; and (36) Jane Doe. *Doc. 126*.

According to the second amended complaint, Mobley alleges violations stemming from his imprisonment at SCI Huntington from June 2010 until August 2013. *Id.* at ¶¶ 37, 386. The allegations in Mobley's second amended complaint, like the allegations in his amended complaint, are still drafted in a diary-like-manner, generally providing a day-by-day account of: his medical condition as it pertains to an alleged cardiac condition, an alleged Trigeminal Neuralgia/Temporomandiular Joint Disorder ("TN/TMJ"), and alleged allergies; his ongoing interactions with various medical providers, including providers both inside and outside of the prison; his diagnoses and treatment; the filing of his medically-related grievances; and finally, the conditions of SCI Huntingdon. Based on these allegations, Mobley seeks compensatory and punitive damages, injunctive relief, and costs. *Id.* at 62.

Pending before us are motions to dismiss filed by the following defendants: Long, Parkes, Keith, Dively, Gomes, and Trimai (*doc. 131*); Bickell, Oppman, Garman, Eckard, Kozak, Price, Weidel, Harker, Wagman, Feathers, Williams, Hoffmaster, Showalter, Stover, Wetzel, Varner, and McCorkle (*doc. 132*); Jabbour and Hreibe (*doc. 135*); and Roth (*doc. 138*). These motions are ripe for review.[1]

---

[1] Defendants Shoaf, Rescigno, Araneda, Cole, Tavares, Migliore, Agra, Shower, Chew, and Jane Doe have not been served. As discussed in our previous order (*doc. 153*), these defendants may be subject to dismissal pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## III. Discussion.

### A. Rule 8 of the Federal Rules of Civil Procedure.

Mobley's seconded amended complaint fails to satisfy the requirement of Rule 8(a)(2) that it set forth a "short and plain statement of the claim" and the requirement of Rule 8(d)(1) that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Although Mobley's seconded amended complaint, which as previously stated, consists of 62 handwritten pages, 494 paragraphs, of which at least 414 constitute the factual background, and 24 counts, is much shorter than his amended complaint, it is, nevertheless, needlessly long, highly repetitive, and largely verbose. *See Downing v. York Cty. Dist. Atty.*, No. 1:CV-05-0351, 2005 WL 1210949, at *2 (M.D. Pa. 2005) ("In the instant case, the Plaintiffs' Complaint is thirty-three pages long and contains 299 paragraphs, of which 280 constitute the factual background. This far exceeds the notice pleading provided for in the federal rules."); *Burks v. City of Philadelphia*, 904 F. Supp. 421, 424 (E.D. Pa. 1995) (finding "a fact-laden, 36–page, 128–paragraph narrative that describes in unnecessary, burdensome, and often improper argumentative detail, every instance of alleged [unlawful conduct] perpetrated by Defendants over [a two year period]" was a "gross departure from both the letter and the spirit of Rule 8(a)(2)[ ]"). It mixes allegations of relevant facts and irrelevant facts, imposing an unjustifiable burden upon both the Court and the defendants to cull

out each cause of action asserted and the factual allegations underlying each cause of action. This unjustifiable burden is only heightened by the fact that Mobley's factual allegations are largely presented as a rambling narrative, interspersed with accusations and incidents, spanning over a timeframe of several years. *See Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (affirming the dismissal of a lengthy complaint, pursuant to Rule 8, where the claims were either unrelated or overlapping, and most were based on incidents which occurred over several years).

Although we are mindful of Mobley's status as a *pro se* prisoner and our obligation to liberally construe his pleadings, Mobley was cautioned in our previous Report and Recommendation (*doc. 124*), that his *pro se* status does not excuse him from complying with the Federal Rules of Civil Procedure or the Local Rules of this Court, *see McNeil v. United States*, 508 U.S. 106, 113 (1993) (providing that procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those who proceed without counsel), nor does it excuse him from complying with this Court's directives.   In our previous Report and Recommendation, we identified six directives for Mobley to follow in order to cure the deficiencies in his amended complaint. *Doc. 124* at 11.  Mobley, however, has failed to cure the deficiencies in his second amended complaint, and as such, Mobley has not only failed to comply with Rules 8(a)(2) and (d)(1), but also with this Court's directives.   Despite Mobley's patent failure to comply, however, we

will address the merits of the motions to dismiss that have been filed by the various defendants.[2]

**B. Rule 12(b)(6) of the Federal Rules of Civil Procedure.**

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[2] Considering that the second amended complaint includes 414 averments of factual background, such averments will only be referenced when they are relevant to our discussion.

662, 677-78 (2009).   The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts."  *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged."  *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679).

Moreover, a complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).   Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### C. Mobley's § 1983 Claims.

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .
> . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  "'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'"  *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### 1. Lack of Personal Involvement.

Mobley's second amended complaint fails to state a claim upon which relief may be granted against defendants Stover and Varner whose only alleged involvement in this matter is the administration of Mobley's grievances and appeals.

12

Liability under § 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred.  *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

There are two viable theories of supervisory liability.  *Santiago v. Warminster Twp.*, 629 F.3d, 121, 129 n.5 (3d Cir. 2010).  Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm.  *Id.*  Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights.  *Id.*

Here, Mobley alleges the personal involvement of defendants Stover and Varner on the basis of their supervisory roles in the administration of his grievances and appeals.  *Doc. 126* at ¶¶ 329, 408, 409.  Participation in the after-

the-fact review of Mobley's grievances and appeals, however, is insufficient to establish personal involvement on the part of Stover and Varner. Liability cannot rest upon allegations that these defendants reviewed and affirmed the denial of Mobley's grievances on appeal, nor can liability rest upon allegations that these defendants failed to act favorably upon Mobley's grievances and appeals. As the United States Court of Appeals for the Third Circuit observed:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

*Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008). Indeed, as to such claims, the Court of Appeals has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." *Paluch v. Sec'y Pennsylvania Dept. Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011). Thus, we find that Mobley has failed to establish the personal

involvement of defendants Stover and Varner for purposes of § 1983 liability. Accordingly, these defendants should be dismissed from this action.[3]

### 2. Mobley's Eighth Amendment Claims.

### a. Medical Claims.

Additionally, the second amended complaint fails to state a claim upon which relief may be granted against the following defendants: Roth, Long, Hreibe, Jabbour, Williams, McCorkle, Kozak, Dively, Trimai, Gomes, Wagman, Feathers, Hoffmaster, Keith, Weidel, Oppman, Garman, Price, Bickell, Wetzel, Showalter, and Eckard.

In order for a plaintiff to allege a viable Eighth Amendment medical claim, he must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. 97, 104-105; *see also Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d

---

[3] Even assuming Mobley has set forth well-pleaded facts to raise an inference of personal involvement on behalf of defendants Stover and Varner, Mobley has not stated a First Amendment claim (*see doc. 126* at ¶ 449) against these defendants by alleging deficiencies in the review of his grievances and appeals. *See Cole v. Mistick*, No. 05–1476, 2009 WL 1160962, at *2 (W.D. Pa. 2009) (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("To the extent that Plaintiff is arguing that his First Amendment right to petition the government includes a right to file grievances or to an effective grievance system, Plaintiff is wrong as a matter of law."); *Caldwell v. Beard*, 324 F.App'x 186, 189 (3d Cir. 2009) ("The District Court correctly noted that an inmate has no constitutional right to a grievance procedure."); *Myron v. Terhune*, 225 F.App'x 434, 438 (9th Cir. 2007) ("[T]here is no constitutional right to an effective prison grievance system[.]").

Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").

A medical need is serious if it "has been diagnosed by a physician as requiring treatment" or if it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N. J. 1979). Additionally, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle*, 429 U.S. at 103). Further, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a constitutional claim because medical malpractice is not a constitutional violation. *See Farmer,* 511 U.S. at 835 (holding that "deliberate indifference describes a state of mind more blameworthy than negligence"); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation."); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002) (providing that claims of negligence or medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). Instead, deliberate indifference represents a much higher

17

standard, one that requires "'obduracy and wantonness,' *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197.

"Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted). And courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Spencer v. Courtier*, 552 F. App'x 121, 124 (3d Cir. 2014) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). "Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim." *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Employees*, 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010).

Further, a nonmedical prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when the prisoner was already being treated by a prison doctor. *Durmer*, 991 F.2d at 69. "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official

. . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

> ### i. Mobley's Second Amended Complaint Fails to State an Eighth Amendment Medical Claim against Roth, Long, Hreibe, Jabbour, Williams, McCorkle, Kozak, Dively, and Trimai.

Here, we find that Mobley has not set forth sufficient facts to raise an inference that defendants Roth, Long, Hreibe, Jabbour, Williams, McCorkle, Kozak, Dively, or Trimai were deliberately indifferent to his serious medical needs.

Although Mobley, throughout the entirety of his second amended complaint, fervently disagrees with the diagnoses, care, and course of treatment he received from these defendants, such disagreement is insufficient to state an Eighth Amendment claim. *See Estelle*, 429 U.S. at 105–06 (providing that "in the medical context . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). For instance, Mobley concludes that his EKG's were abnormal and that his symptoms were cardiac in nature, but as also alleged by Mobley himself, defendants Roth, Long, Hreibe, Jabbour, Williams, and McCorkle, after performing some investigation or testing of Mobley, determined that his EKG's were normal and that his symptoms were not cardiac in nature. *See e.g.*, *doc. 126* at ¶¶ 72, 73 (alleging that in June of 2010, defendant Roth, after

ordering blood work, EKG's, and a chest x-ray, informed Mobley that his EKG was "normal" and that "he had an allergic reaction to Bactrim, nothing more," and prescribed him a dose of prednisone); *id.* at ¶¶ 158, 159 (alleging that in January of 2012, defendant Roth, after reviewing Mobley's June 2012 records, confirmed that "everything was normal," and further alleging that after Roth ordered new labs and EKG's, he determined they were "okay"); *id.* at ¶ 74 (alleging that defendant Long informed Mobley that his symptoms were "not cardiac" in nature and discharged Mobley back to SCI-Huntingdon); *id.* at ¶ 217 (alleging that Mobley was transported to J.C. Blair for a cardiology consult with defendant Hreibe, who recommended a heart catheterization in order to "assure [Mobley that] there's nothing wrong with [his] heart") *id.* at ¶¶ 236, 239, 240 (alleging that Mobley was transported to Altoona Regional Health Care, where defendant Jabbour, a cardiologist, ordered blood work and performed an EKG and heart catheterization, all of which Jabbour opined to be "normal"); *id.* at ¶¶ 189, 190 (alleging that defendant McCorkle performed an EKG and told Mobley that the EKG was "normal"); *id.* at ¶¶ 377, 378 (alleging that he (Mobley) needed a doctor and was refused a doctor by defendant Williams, who, after assessing Mobley and taking his blood pressure, concluded that Mobley's blood pressure was not high, that he should elevate his swollen ankles, take Tylenol, and that although Mobley did not need to see a doctor, she would, nevertheless, talk to defendant Long, a doctor).

Thus, our review of Mobley's allegations against defendants Roth, Long, Hreibe, Jabbour, Williams, and McCorkle leads us to conclude that these defendants, after performing some investigation or testing, determined that Mobley did not have the condition or symptoms Mobley thought he had, and certainly, while these defendants could have conceivably been wrong, they could not have consciously disregarded a risk of harm that they had found reason to believe did not exist. *Bearam v. Wigen*, 542 F. App'x 91, 93 (3d Cir. 2013); *see id.* (holding prisoner's allegations that medical expert "either misdiagnosed or refused to diagnose" prisoner's condition, where some investigation suggested prisoner did not have the condition the prisoner thought he had, were insufficient to allege deliberate indifference). Accordingly, there are no well-pleaded facts from which an inference of a substantial risk of serious harm could be drawn. *See also U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (internal quotation omitted).

Similarly, to the extent that Mobley concludes that defendants Roth, Long, Jabbour, Hreibe, or McCorkle were deliberately indifferent to his serious medical needs because they disagreed with the professional opinion of another medical

expert, we also find such disagreement to be insufficient for the purpose of alleging deliberate indifference. *Compare doc. 126* ¶¶ 73, 158 (defendant Roth), 74, 162, 163, 242 (defendant Long), 217 (defendant Hreibe), 238-39 (defendant Jabbour), and 77, 190 (defendant McCorkle) (informing Mobley that his condition was not cardiac in nature and/or that his test results, including various labs and EKG's, were "normal") *with* ¶¶ 177 (non-defendant doctor), 250, 251 (non-defendant doctor) (informing Mobley that he had uncontrolled blood pressure and an abnormal EKG).   As the United States Court of Appeals for the Third Circuit has observed, "[i]f a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis in original).   Thus, Mobley's well-pleaded facts merely show a difference in medical opinion, not a display of deliberate indifference.

Even recognizing Mobley's disagreement with the various medical decisions that have been made, his second amended complaint clearly establishes that he was rendered continual medical care.  Indeed, his 414 paragraphs of factual background demonstrate, in staggering detail, that he received extensive medical care for his various medical needs by way of: a heart catheterization (*see id.* at ¶ 240); a host of

EKG's (*see id.* at ¶¶ 69, 72, 77, 141, 144, 147, 153, 159, 189, 194, 199, 238); a nuclear stress test (*see id.* at ¶ 181); echocardiograms (*see id.* at ¶¶ 194, 199, 209, 213, 217, 239); various lab work (*see id.* at ¶¶ 152, 162); numerous medications, including psychotropic medication (*see id.* at ¶¶ 73, 122, 139, 140, 152, 200, 227); an MRI (*see id.* at ¶ 247); jaw splint therapy (*see id.* at ¶¶ 35, 200); a nerve block (*see id.* at ¶ 200); consults (*see id.* at ¶¶ 200, 260, 296); inhalers (*see id.* at ¶¶ 49, 58, 93, 97, 119, 139); and allergy shots and immunotherapy (*see id.* at ¶¶ 300, 358).

Despite this continual medical care he has received, Mobley concludes that the defendants, including Roth, Long, Hreibe, Jabbour, McCorkle, Kozak, Dively, and Trimai, were nevertheless deliberately indifferent to his serious medical needs. Mobley's legal conclusions are, however, contradicted by his own factual allegations. For instance: (1) Mobley concludes that defendant Kozak, a dentist, "refused" to treat him, yet Mobley has also set forth well-pleaded facts that she informed him that his condition "was not a dental matter" and that there was "nothing she could do," so she "referred" him to a physician's assistant, who prescribed Mobley medication (*see id.* at ¶¶ 244, 245); (2) Mobley concludes that defendant Dively "refused" to give him medical care or examine him, but, as alleged by Mobley himself, he would not agree to being examined through the

"unclean door aperture" of his cell (*see id.* at ¶ 234);[4] (3) Mobley concludes

deliberate indifference on the basis that he was denied a neurology consult in June

of 2010 (*see id.* at ¶ 123) for his TN/TMJ, but also alleges that from June 2008 up

until July 2012 he had "numerous" consults, along with other types of treatment

for his TN/TMJ (*id.* at ¶ 200); (5) Mobley concludes deliberate indifference on the

basis that Trimai knew that the conditions of SCI-Huntingdon caused him "asthma

and allergy sickness," but Mobley has set forth well-pleaded facts that he

continually received extensive medical care for such symptoms, including an

albuterol asthma inhaler, prednisone, decongestants, antibiotics, nasonex, flonase,

consultation with allergist, allergy shots, and immunotherapy (*see id.* ¶ 131);[5] and

---

[4] With respect to Dively, we further note that Mobley has not set forth well-pleaded facts to raise an inference that she acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 834 (requiring a "sufficiently culpable state of mind," such as reckless disregard to substantial risk of serious harm) (internal quotation omitted). It appears, based upon Mobley's own averments, that treatment ended when Mobley failed to comply with her examination. Thus, Mobley has failed to allege an act evincing deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 105-06 ("[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").

[5] Moreover, Mobley has also not set forth well-pleaded facts to show an alleged act or failure to act on behalf of defendant Trimai. Nor has Mobley set forth well-pleaded facts to show that Trimai was aware that her alleged act or failure to act would subject Mobley to a substantial risk of harm. *See Farmer*, 511 U.S. at 842. *See e.g.*, *doc. 126* at ¶ 165 (alleging that Mobley came under the care of Trimai, presenting symptoms of "cardiac[,] asthmatic, and allergy pain," but failing to allege, or otherwise identify, any conduct or omission on Trimai's behalf which

(6) Mobley concludes that the medical defendants, including defendants Roth, Long, Hreibe, Jabbour, and McCorkle were deliberately indifferent to his medical needs because they "cover[ed] up" his heart attack and "intentionally mislead" him that he was not having cardiac problems, yet Mobley has also set forth well-pleaded facts to show that a number of medical experts opined that Mobley's test results were "normal" and that his symptoms were not cardiac in nature (*see doc. 126* at ¶¶ 73, 74, 77, 80, 81, 158, 162, 170, 171, 182, 190, 213, 217, 238, 239, 240).

Based on the foregoing reasons, we find that Mobley has failed to show deliberate indifference on behalf of defendants Roth, Long, Hreibe, Jabbour, Williams, McCorkle, Kozak, Dively, and Trimai.   At best, Mobley has set forth allegations of his disagreement with these defendants, as well as differences among the opinion of medical experts, regarding the diagnoses, treatment, and medical care he received, neither of which suffice to state a viable claim under the Eighth Amendment.   *See Spruill*, 372 F.3d at 235.   Because "[a]ny attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed[,]

---

raises an inference of a culpable state of mind).   We further looked to Mobley's brief in opposition (*doc. 150*) to Trimai's motion to dismiss (*doc. 137*) for any resemblance of deliberate indifference allegations that Mobley may have lodged against her; such allegations, however, do not exist.   *See doc. 150* at 25 ("Plaintiff for the sake of this [brief] does not argue defendant Trimai's deliberate indifference").

since such determinations remain a question of sound professional judgment," *Leonhauser v. Long*, No. CIV.A. 1:11-0341, 2012 WL 398642, at *2 (M.D. Pa. 2012) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)), we will not attempt to second guess the decisions, judgment, or opinions of these medical experts. Thus, we recommend that defendants Roth, Long, Hreibe, Jabbour, Williams, McCorkle, Kozak, Dively, and Trimai be dismissed from this action.

### ii. Mobley's Second Amended Complaint Fails to State an Eighth Amendment Medical Claim against Gomes, Feathers, Wagman, Hoffmaster, and Keith.

Likewise, Mobley has failed to set forth sufficient facts to raise an inference that defendant Gomes, Feathers, Wagman, Hoffmaster, and Keith were deliberately indifferent to a serious medical need.

Regarding defendant Gomes, Mobley alleges deliberate indifference on the basis that he was prevented from receiving recommended treatment "from cardiologist from November 27, 2012." *Doc. 126* at ¶¶ 322, 324. As alleged by Mobley, he came under the care of Jabbour, a cardiologist at Altoona Regional Healthcare, on November 27, 2012. *Id.* at ¶ 236. Mobley sets forth facts that Jabbour, after ordering blood work and performing an echocardiogram, an EKG, and a heart catheterization, informed Mobley that all labs and tests were "normal." *Id.* at ¶ 239, 240. Despite setting forth well-pleaded facts regarding Jabbour's

26

investigation, testing, and opinion, Mobley failed to allege any facts that Jabbour recommended a treatment plan.   Mobley also failed to allege any facts regarding what the treatment plan entailed or how the treatment plan would address his alleged cardiac condition.   Most detrimental, however, is that Mobley has failed to sufficiently allege facts that would raise an inference that Gomes was aware of and disregarded an excessive or substantial risk of harm to Mobley's health or safety by not following the alleged treatment plan.   Moreover, although Mobley also alleges deliberate indifference on the basis that Gomes refused to treat him, *id.* at ¶¶ 324, 362, 374, Mobley does not allege facts to show that Gomes was aware of an excessive or substantial risk of harm.   To the contrary, the well-pleaded facts show that Gomes, on one alleged occasion, believed "there was nothing emergently wrong with [Mobley]." *id.* at ¶ 362, and on another alleged occasion, believed that Mobley "[did not] need a cardiologist." *Id.* at ¶ 382; *see Spruill*, 372 F.3d at 237 (explaining that a plaintiff, in order to state a deliberate indifference claim, should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants).   While Gomes may conceivably be wrong in his medical opinion, negligently diagnosing or treating a medical condition does not rise to an Eighth Amendment violation of a prisoner's right to medical care.   Moreover, we find, despite Mobley's conclusions, that Gomes did provide Mobley with some form of treatment, although it may not have been the type of treatment that Mobley

preferred—i.e., seeing a cardiologist.  *See id.* at ¶ 372 (alleging that Gomes examined him and informed him "I'm gonna give you some tylenol."); *id.* at ¶¶ 380, 382 (alleging that Gomes, after examining him (Mobley) at his cell and assessing "mild" swelling, stated that he would give him a "water pill"); *see also James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) ("Although [prisoner] may have preferred a different course of treatment, his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.").  In sum, Mobley has failed to set forth well-pleaded facts to raise an inference that Gomes knew of and disregarded an excessive or substantial risk of harm to Mobley's health or safety.  *See Farmer*, 511 U.S. at 834 (requiring a culpable state of mind, such as reckless disregard to substantial risk of serious harm).

With respect to defendants Feathers and Wagman, Mobley has not set forth well-pleaded facts to raise an inference that they were deliberately indifferent to his medical need by delaying his medication.  Specifically, Mobley contends that he waited 11 hours to receive his nitroglycerin medication.  *Doc. 126* at ¶ 343. Mobley has not, however, set forth any well-pleaded facts that this delay exposed him to undue suffering or the threat of permanent injury.  *See Regelman v. Weber*, No. CIV.A. 10-675, 2011 WL 1085685, at *8 (W.D. Pa. 2011) (emphasis in original) ("A delay in providing medical care does not show deliberate indifference

unless it was motivated by non-medical factors, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)[,] **and** such denial exposes the inmate to undue suffering or the threat of permanent injury." (citing *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  Nor has he set forth any well-pleaded facts that such a delay exhibited a pattern of deprivation, rising to the level of deliberate indifference.  *See Ayala v. Terhune*, 195 Fed.Appx. 87, 90-91 (3d Cir. 2006) (finding no deliberate indifference where a prisoner suffered occasional delays of up to four days in receiving prescription medication, explaining that prisoner received regular medical treatment and that such delays were sporadic and did not exhibit a pattern of deprivation).  Thus, the facts do not draw an inference that the delay in Mobley's medication rises to the level of a constitutional violation.

Regarding defendant Hoffmaster, Mobley has not set forth well-pleaded facts to raise an inference that Hoffmaster was deliberately indifferent to Mobley's medical needs.  He alleges that Hoffmaster "took numerous EKG's," but "could not work new machine" and "got frustrated" and left him in his cell "with no care." *Doc. 126* at ¶ 361.  He does not allege, however, that Hoffmaster was aware of an excessive or substantial risk of harm and disregarded that risk of harm.  Nor does he allege that she delayed necessary medical treatment.  Thus, these facts fail to demonstrate that Hoffmaster "[imposed an] 'unnecessary and wanton infliction of

pain contrary to contemporary standards of decency.'" *Rouse*, 182 F.3d at 197 (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)); *Whetstone v. Ellers*, No. 3:08-CV-2306, 2009 WL 3055354, at *6 (M.D. Pa. 2009) ("Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are egregious enough to rise to the level of a constitutional violation."). Rather, the facts show that when Hoffmaster was assessing Mobley, she had difficulty operating the EKG machine. Such bare-bones allegations, however, do not sound in deliberate indifference. *See Iqbal*, 556 U.S. at 662, 678 (finding that "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and it asks for "more than an unadorned, the-defendant-unlawfully-harmed-me- accusation.").

Finally, with respect to defendant Keith, Mobley has not set forth well-pleaded facts to raise an inference that Keith was deliberately indifferent to Mobley's medical needs. Mobley alleges deliberate indifference on the basis that defendant Keith failed to inform Mobley of the need to fast prior to having his blood drawn and that this caused him to be improperly diagnosed as a diabetic. *Doc. 126* at ¶ 133. The simple misdiagnosis of Mobley as a diabetic, however, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *See Weigher v. Prison Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010) ("We agree with the District Court that such a claim of

misdiagnosis would sound in negligence as a malpractice suit, and does not

constitute deliberate indifference."); *Zilich v. Doll*, No. CIV.A. 3:13-2814, 2014

WL 7384162, at *2, *5 (M.D. Pa. Dec. 24, 2014) (granting defendant's motion to

dismiss prisoner's Eighth Amendment deliberate indifference claim where prisoner

alleged he was misdiagnosed).   Thus, we recommend that defendants Gomes,

Feathers, Wagman, Hoffmaster, and Keith be dismissed from this action.

> ### iii. Mobley's Second Amended Complaint Fails to State an Eighth Amendment Medical Claim against Showalter, Price, Weidel, Oppman, Garman, Bickell, Wetzel, and Eckard.

Since Mobley's Eighth Amendment claims against these foregoing

defendants fail, his claims against the following non-medical defendants also fail:

Showalter, Price, Weidel, Oppman, Garman, Bickell, Wetzel, and Eckard.

"[A]bsent a reason to believe (or actual knowledge) that prison doctors or their

assistants [were] mistreating (or not treating) [Mobley], a non-medical prison

official like [Showalter, Price, Weidel, Oppman, Garman, Bickell, Wetzel, and

Eckard] will not be chargeable with the Eighth Amendment scienter requirement of

deliberate indifference." *Spruill*, 372 F.3d at 236.   Mobley has not set forth

sufficient allegations to state viable claims that the medical defendants violated his

constitutional rights.   As such, Mobley cannot state a claim against these non-

medical defendants, for failing to abate the medical defendants' conduct.   *Id.* at

236 ("If a prisoner is under the care of medical experts . . .  a non-medical prison

official will generally be justified in believing that the prisoner is in capable hands."). Accordingly, we recommend that Mobley's Eighth Amendment medical claims should be dismissed against defendants Showalter, Price, Weidel, Oppman, Garman, Bickell, Wetzel, and Eckard.

### iv. Mobley's Second Amended Complaint States an Eighth Amendment Medical Claim Against Parkes.

We find, however, that the second amended complaint does state an Eighth Amendment medical claim upon which relief may be granted against defendant Parkes. Liberally construing the second amended complaint, we find that Mobley has set forth facts that Dr. Mark E. Lipitz, a non-defendant doctor, diagnosed Mobley with TN/TMJ and recommended surgery—specifically, the Janetta Procedure. *Doc. 126* at ¶¶ 200, 201. Mobley has also set forth well-pleaded facts that this surgery will stop his nerve pain, face pain, muscle pressure, and burning in his ears and throat. *Id.* at ¶ 201, 202. With respect to Parkes, Mobley specifically avers that she would not provide him with "a medical reason for failing to do/pay for TMJ surgery," as well as the "removal of [a] painful cyst in [his] left maxillary sinus[.]" *Id.* at ¶ 410; *doc. 150* at 23. As a result of the failure to proceed with surgery, Mobley has sufficiently alleged facts that he "lives with painful arthritic, clicking and popping" and "severe" discomfort and pain, all of which result in "the loss of joys of daily activities," including eating and swallowing. *Id.* at ¶ 412. Accordingly, we find that Mobley has stated a cognizable Eighth Amendment

claim against Parkes.   In reaching this conclusion, we acknowledge that Mobley has alleged receiving extensive treatment from various medical professionals for his alleged TN/TMJ condition.   Mobley has also alleged, however, that such treatment was inefficacious and harmful to him during the timeframe of June 2010 (*see id.* at ¶¶ 121, 122, 123) up until August 2013 (*see id.* at ¶¶ 386-389).  *See id.* at ¶¶ 200-201, 388.  And, as the United States Court of Appeals for the Third Circuit has observed:

> Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "'an easier and less efficacious treatment'" of the inmate's condition. *West*, 571 F.2d at 162 (citations omitted). Nor may they condition provision of needed medical services on the inmate's ability or willingness to pay. *See Ancata*, 769 F.2d at 704; *cf. City of Revere*, 463 U.S. 239, 245, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (right to treatment constitutionally mandated regardless of who pays for treatment).

*Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).   Thus, we find that Mobley's Eighth Amendment medical claim should proceed against defendant Parkes.

### b. Conditions of Confinement Claims.

#### i. Mobley's Second Amended Complaint States an Eighth Amendment Conditions of Confinement Claim Against Garman, Bickell, Price, Wetzel, Showalter, and Eckard.

The second amended complaint further states an Eighth Amendment conditions of confinement claims against defendants Garman, Bickell, Price, Wetzel, Showalter, and Eckard.  It is well-settled that "the conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Farmer*, 511 U.S. at 832 (quoted case omitted).  The Constitution, however, "does not mandate comfortable prisons."  *Id.* (quoted case omitted).  The Constitution, specifically the Eighth Amendment, instead, imposes on prison officials a duty to only provide *humane* conditions of confinement.  *Id.*  As such, prisons are merely required to provide *adequate* food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates.  *Id.*, 511 U.S. at 832-33.

When humane conditions are denied, liability can only be established if a prison official has a "sufficiently culpable state of mind" and the alleged conditions must be sufficiently serious from an objective standpoint.  *Id.* at 834.  In prison-conditions cases the state of mind of a prison official is one of "deliberate indifference."  *Id.*

"Deliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835.  To establish deliberate indifference, a plaintiff must show that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official drew the inference. *Id.* at 837.  Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not … cannot … be condemned as the infliction of punishment." *Id.* at 838; *see also Wilson v. Seiter*, 501 U.S. 294, 299-302 (1991) (rejecting a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions).

Here, we find that Mobley has stated an Eighth Amendment conditions of confinement claim against defendants Garman, Bickell, Price, Wetzel, Showalter, and Eckard.  Mobley alleges that from the time he entered SCI Huntingdon, June 18, 2010, up until the time when he was transferred to SCI Houtzdale, July 23, 2013, he was subjected to mold, mildew, dust, rust, heat, humidity, cigarette smoke, poor air ventilation and circulation, rat feces, spiders, spider webs, and "little brown bugs." *Doc. 126* at ¶¶ 39, 41, 47, 52, 78, 88, 89, 96, 97, 98, 106, 110, 112, 315, 320.  Mobley further alleges that these hazardous conditions were making him sick, aggravating his asthma and allergies, and were causing him anxiety, headaches, coughing, watery eyes, difficulty breathing, and lack of sleep.

*Id.* at ¶¶ 45, 47, 49, 58, 63, 91, 102, 301, 384.   Mobley also alleges that the defendants knew of these hazardous conditions and the harmful effects they were having on him because he continuously made complaints to them; yet despite having such knowledge, *via* his complaints, Mobley contends that the defendants would not address the conditions, nor would they transfer him to a different facility.  *Id.* at ¶¶ 120, 129, 302, 303, 315, 329, 399, 419, 458, 487; *doc. 151* at 26. Thus, we find, at this early stage of the proceedings, that Mobley has sufficiently alleged that these defendants were made aware of a dangerous, ongoing situation, and by failing to take action, they acquiesced in that situation.  *See Marks v. Corizon Health Care Inc.*, No. 4:13-CV-0726, 2014 WL 4252430, at *6 (M.D. Pa. 2014) ("While the filing of a complaint about a past event is not sufficient to show that the person to whom the complaint was addressed had actual knowledge of the events at the time they happened, in some circumstances, a complaint may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims."). Thus, we recommend that Mobley's Eighth Amendment conditions of confinement claims against defendants Garman, Bickell, Price, Wetzel, Showalter, and Eckard proceed.

### 3. Mobley's First Amendment Retaliation Claims.

Moreover, the second amended complaint states a retaliation claim upon which relief may be granted against defendant Keith, but not against defendant Harker. Retaliation claims are judged against exacting legal standards. A prisoner claiming that a defendant retaliated against him for exercising his constitutional rights must show that: (1) his conduct was constitutionally protected; (2) he suffered "adverse action" at the hands of the defendant; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002).

### a. Mobley's Second Amended Complaint States a First Amendment Retaliation Claim Against Keith.

As to Keith, Mobley alleges that, sometime after he filed a grievance against her, she was about to draw his blood when she told him that she's "not scared of [him]" or "[his] grievances" and she does not "care about court." *Id.* at ¶ 279. Mobley further alleges that she "snatch[ed] up [the] needle/syringe, popp[ed] the top off drew the syringe in a threatening, aggressive gesture as if it was a weapon like she was gonna stab [him]." *Id.* at ¶ 281. In fear, "[Mobley] jumped up and backed out of defendant Keith's range with [the] syringe," and after the corrections officers, who were present, did nothing, he was escorted out of triage and taken to the law library. *Id.* ¶ 282. Following this encounter, Mobley alleges that Keith interfered with his mail and fabricated a misconduct. *Id.* ¶ 285. As a result, we

37

find that Mobley has stated a plausible retaliation claim against Keith. In particular, we find that Mobley has set forth well-pleaded facts to raise an inference that he was (1) engaged in a constitutionally protected activity of filing a grievance against Keith, *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (providing that that the filing of a grievance is protected activity under the First Amendment); (2) he suffered adverse actions, the interference with his mail and the fabrication of misconduct, which would be sufficient to deter a prisoner of ordinary firmness from exercising his constitutionally protected conduct, *see Mitchell*, 318 F.3d at 530 (holding that prisoner's allegation that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); *Williams v. Varano*, No. 3:CV-12-529, 2013 WL 877206, at *7 (M.D. Pa. 2013) (finding prisoner to have stated an adverse action where there were, among other things, fabricated charges of misconduct and mail interference); and (3) there was a causal connection between the filing of Mobley's grievance against Keith and her issuance of a misconduct report, since she issued the misconduct report a mere three days after she told him she was not scared of him and does not care about the filing of his grievances. Although we conclude that Mobley has stated a plausible claim for retaliation against Keith, we cannot conclude that he has stated one against Showalter, Price, or Bickell for "knowingly acquies[ing] in retaliatory conduct[.]" *Id.* at ¶ 446. Our

efforts to find sufficient facts to suggest that these defendants acquiesced in the retaliatory conduct have been to no avail.  Because we can find no well-pleaded facts to support Mobley's bald legal conclusion, we find that he has not stated a plausible claim for relief against Showalter, Price, or Bickell.[6]

### b. Mobley's Second Amended Complaint Fails to State a First Amendment Retaliation Claim Against Harker.

With respect to Harker, Mobley contends that that she retaliated against him by issuing him a "fabricated misconduct [report]."  *Doc. 126* at ¶ 312.  However, Mobley has set forth allegations showing that he refused to comply with her directive, and further, that it was this refusal which prompted Harker to write a misconduct report.  *See id.* at ¶ 309 (alleging that after being told by Harker that he had to turn over his Nasonex medication, in order to be given his Flonase medication, he told Harker "no"); *id.* at ¶ 310 (alleging that Harker explained that the "medical providers and Central Office feel[ ] like Nasonex is too expensive"); *id.* at ¶ 312 (alleging that Harker wrote a "fabricated misconduct [report] saying [he] refused to obey a direct order and not return Nasonex").  Thus, as alleged by Mobley, it was his refusal that was the basis for Harker's misconduct report, and as

---

[6] Although we have denied Mobley's motion (*doc. 145*) for leave to file a third amended complaint, we remain cognizant that in his motion, Mobley sought to remove eight defendants, one of whom was defendant Keith.  If Mobley still wishes to dismiss defendant Keith from this action, he can seek voluntary dismissal of Keith pursuant to Rule 41 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 41.

such, Mobley's second amended complaint fails to state a retaliation claim upon which relief may be granted as to Harker.  Thus, we recommend that Harker be dismissed from this action.

### C. Mobley's State Claims.

Last, the second amended complaint fails to state a negligence claim against defendants Bickell and Wetzel.  Pursuant to Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons.Stat. Ann. § 2310.  The General Assembly, however, has specifically waived sovereign immunity in nine categories, *see* 42 Pa. Cons.Stat. Ann. § 8522, including the category of medical professional liability.

Here, Mobley grounds his negligence claim on the basis that, despite his medical issues, defendants Bickell and Wetzel "refused to correct and or remove [him] from Huntingdon and the Sick Building." *Doc. 126* at ¶ 493.  Mobley, however, has not pled that the alleged negligence falls within one of the recognized statutory exceptions to sovereign immunity.  Moreover, we find that defendants Wetzel and Bickell are not health care employees.  *See  Vazquez v. Yeoman*, No. 1:CV-13-01067, 2014 WL 1653113, at *8 (M.D. Pa. 2014) ("[I]t is well-settled

that immunity is waived only for claims asserted against health care employees, and not to individuals who are not medical professionals."). Thus, we recommend dismissing Mobley's negligence claim on the basis of sovereign immunity.

## IV. Recommendation.

Accordingly, based on the foregoing reasons, **IT IS RECOMMENDED** as follows:

(1) The motion (*doc. 138*) to dismiss filed by Defendant Roth be **GRANTED**.

(2) The motion (*doc. 135*) to dismiss filed by Defendants Hreibe and Jabbour be **GRANTED**.

(3) The motion (*doc. 132*) to dismiss filed by Defendants Bickell, Oppman, Garman, Eckard, Kozak, Price, Weidel, Harker, Wagman, Feathers, Williams, Hoffmaster, Showalter, Stover, Wetzel, Varner, and McCorkle be **GRANTED** in part and **DENIED** in part. With respect to Defendants Oppman, Kozak, Weidel, Harker, Wagman, Feathers, Williams, Hoffmaster, Stover, Varner, and McCorkle, we recommend that the motion be **GRANTED**. With respect to Defendants Bickell, Garman, Eckard, Price, Showalter, and Wetzel, we recommend that the motion be **DENIED**. Mobley's Eighth Amendment conditions of confinement claim should

proceed against Defendants Bickell, Garman, Eckard, Price, Showalter, and Wetzel.

(4) The motion to dismiss filed by Defendants Long, Dively, Gomes, Keith, Parkes, and Trimai (*doc. 131*) be **GRANTED** in part and **DENIED** in part. With respect to Defendants Long, Dively, Gomes, and Trimai, we recommend that the motion be **GRANTED**.  With respect to Keith and Parkes, we recommend that the motion be **DENIED**.  Mobley's First Amendment Retaliation claim against Keith should proceed, and Mobley's Eighth Amendment medical claim against Parkes should proceed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **11th** day of **February**, **2016**.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge